IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

THOMAS BOONE,                          )
                                       )
              Petitioner,        )        Case No. CV06-339-N-LMB
                                       )
v.                                     )        **MEMORANDUM ORDER**
                                       )
KIM JONES, et al, a Warden,            )
                                       )
              Respondent.        )
_____)

       Pending before the court in this federal habeas corpus action are the following

motions: Petitioner's Motion for Default Judgment (Docket No. 7), Respondent's Motion

for Summary Dismissal (Docket No. 8), Petitioner's Motion for Opposition and

Suppression to/of Respondent's Motion for Summary Dismissal (Docket No. 12),

Petitioner's Motion of Complaint (Docket No. 16), Petitioner's Motion for Judgment as a

Matter of Law (Docket No. 18), Petitioner's Motion for Judgment and Issuance of the

Writ (Docket Nos. 19-1 and 19-2), Petitioner's Motion to Revoke and Vacate the State

Case, Records, Transcripts, and Discharge the Petitioner (Docket No. 20), Petitioner's

Motion for Hearing (Docket No. 21), and Petitioner's Motion to Vacate (Docket No. 28).

       All parties have consented to the jurisdiction of a United States Magistrate Judge

to enter final orders in this case (Docket No. 6).  Having reviewing the state court record,

MEMORANDUM ORDER 1

the pending motions, and the responses and replies, the Court concludes that oral

argument is unnecessary and enters the following Order.

## PENDING MOTIONS

### A.      Petitioner's Motion for Default Judgment (Docket No. 7)

Petitioner has filed a Motion for Default Judgment (Docket No. 7).  His Motion is

without legal basis and is denied.  The Initial Review Order specifically allowed

Respondent to file "a responsive pleading or motion," which means that Respondent was

entitled to file an answer or a motion for summary dismissal.  *See Order of December 4,*

*2006*, at p. 10 (Docket No. 5).  Further, default judgment is not applicable in federal

habeas corpus matters.  *See Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990) ("The

failure to respond to claims raised in a petition for habeas corpus does not entitle the

petitioner to a default judgment."); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970)

("Rule 55(a) has no application in habeas corpus cases").

### B.      Petitioner's Motion of Complaint (Docket No. 16)

Petitioner's "Motion of Complaint" appears to be legal argument in support of his

habeas corpus claims.  To the extent that Petitioner seeks return of his property lost as a

result of his incarceration, the "Complaint" is procedurally inappropriate because such

relief is not available in a habeas corpus action.  Accordingly, the Court deems the

Motion moot.

MEMORANDUM ORDER 2

**C.     Respondent's Motion for Summary Dismissal (Docket No. 8)**

    1.      <u>Background</u>

Petitioner pled guilty to and was convicted of sexual abuse of a child under the age of sixteen in violation of Idaho Code § 18-1506.  Petitioner's natural daughter, C.B., was the victim.  The judgment of conviction was entered on February 18, 2000, in the Bonner County District Court.  *See Petition*, at p. 1 (Docket No. 1).  Petitioner was sentenced to five years fixed, with ten years indeterminate.  *State's Exhibit A-1*, at pp. 48-50.

After judgment, Petitioner filed a Rule 35 motion to reduce his sentence, which was denied.  *State's Exhibit A-1*, at pp. 51-53.  Petitioner filed a direct appeal in which he raised two issues: (1) whether the trial court erred by imposing an excessive sentence; and (2) whether the trial court erred by denying his Rule 35 motion for a reduction of sentence.  *State's Exhibit B-1*, at p. 3.  The Idaho Court of Appeals affirmed the conviction and sentence on July 26, 2001.  *State's Exhibit B-3*.  Petitioner did not file a petition for review with the Idaho Supreme Court; therefore, the Idaho Court of Appeals issued its remittitur on August 17, 2001. *State's Exhibit B-4*.

More than two years later, on November 6, 2003, Petitioner filed a second Rule 35 motion seeking reduction of his sentence.  *State's Exhibit C-1*, at pp. 4-7.  The state district court denied the motion because only one such motion is allowed by the Rule, and because such a motion must be made within 120 days after judgment.  *Id*., at pp. 8-10.

Petitioner next filed a motion to commute his sentence, which the court construed as a third Rule 35 motion; it was denied for the same reasons the court denied the second

MEMORANDUM ORDER 3

motion.  *State's Exhibit C-1*, at pp. 35-36.  Petitioner's appeal was heard by the Idaho

Court of Appeals, which affirmed the state district court's ruling.  *State's Exhibit D-3*.

Petitioner then filed a petition for review, which the Idaho Supreme Court denied on

April 19, 2006.  *State's Exhibit D-6*.  The remittitur was issued the same day.  *State's*

*Exhibit D-7*.

Petitioner filed his federal Habeas Corpus Petition on August 25, 2006, bringing

three claims.  First, he asserts that the indeterminate portion of his sentence constitutes

cruel and unusual punishment.  Second, he contends that he is actually innocent.  Third,

he alleges that his conditions of confinement constitute cruel and unusual punishment.

*See Table of Contents to Habeas Petition* (Docket No. 1-7, Attachment 6).

      2.      <u>Statute of Limitations Issue</u>

The current Petition is governed by the provisions of the Anti-Terrorism and

Effective Death Penalty Act (AEDPA), enacted in 1996.  Under AEDPA, a one-year

period of limitation applies to an application for a writ of habeas corpus.  28 U.S.C. §

2244(d)(1).  The one-year period begins to run from the date of one of four triggering

events, as specified in 28 U.S.C. § 2244(d)(1)(A)-(D).  The most common triggering

event occurs on the date upon which the conviction became final, either after direct

appeal or after the time for seeking an appeal has expired.

The statute provides tolling (suspending) of the one-year period for all of  "[t]he

time during which a properly filed application for State post-conviction or other collateral

MEMORANDUM ORDER 4

review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  This is called "statutory tolling."

If, after applying statutory tolling, a petitioner's petition is deemed untimely, a federal court can hear the claims only if the petitioner can establish that "equitable tolling" should be applied.  In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Court clarified that,"[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way."  *Id*. at 418.  In order to qualify for equitable tolling a circumstance must have *caused* Petitioner to be unable to file his federal Petition in time.

Here, Petitioner's conviction became final on August 17, 2001, when the Idaho Court of Appeals issued its remittitur after direct appeal, which signals that the time period had run for Petitioner to file a petition for review with the Idaho Supreme Court. *See Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001).  Petitioner's one-year statutory period ran from August 18, 2001, through August 18, 2002, when it expired. Petitioner's second Rule 35 motion, filed November 6, 2003, was too late to toll the statute.  *See Ferguson v. Palmateer*, 321 F.3d 820 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed.").  In addition, the second motion was not a properly-filed collateral review action and, hence, it could not toll the statute.  *See Artuz v. Bennett*, 531 U.S. 4 (2000);

MEMORANDUM ORDER 5

*State's Exhibit C-1*, at pp. 8-10.  Petitioner's federal Habeas Corpus Petition was not filed until  August 25, 2006, more than four years after the statute expired.

Part of Petitioner's excessive sentence argument is that he was not released on parole after the five-year determinate portion of his sentence had expired but remains held in custody on the indeterminate portion of his sentence.  To the extent that this part of his claim would not have arisen until his parole was denied in 2005 and may be deemed timely, this claim is alternatively subject to denial on the merits, as explained herein below.

      3.    <u>Equitable Tolling Issues</u>

In order for this Court to hear the merits of his Petition, Petitioner must show that equitable tolling should be applied.  Petitioner has a heavy burden given that his Petition was filed four years too late.

Petitioner states that he diligently began researching his case after he received the remittitur in August 2001.  He asserts that he procured a mental evaluation of the victim from the Department of Health and Welfare and a copy of the pediatrician's report on April 26, 2002.[1]  Petitioner argues that "ignorance to material fact unknown to the

---

[1]  A medical record from a pediatrician, Dr. Gilbert, dated November 4, 1999, notes that a physical examination of C.B. indicated that there were no signs of acute injury to the vaginal area, but red, irritated skin.  There was no evidence of penetration, but only nonspecific vaginitis findings which could be from either poor hygiene and inappropriate cleansing or from sexual abuse in the form of fondling or touching.  *Exhibits to Habeas Corpus Petition*, at p. 31 (Docket No. 1-4).  There is also a Health and Welfare letter to Petitioner that states that his daughter has *not* had a formal psychological assessment.  *Exhibits to Habeas Corpus Petition*, at p. 32 (Docket No. 1-4).

MEMORANDUM ORDER 6

prisoner is a defense against loss of tolling." *Petitioner's Brief*, at p. 3 (Docket No. 13). However, even if the Court tolled this time period, Petitioner would still need to account for several more years before his filing could be deemed timely.

Petitioner asserts that he had no access to the courts or the law library while in the Bonner County Jail for a period of two months beginning in November 2003. He was then returned to ISCI, where he later filed a petition for commutation of his sentence on September 29, 2004. Again, even if the Court tolls the two-month time period when Petitioner was housed at the jail, it does not help Petitioner, because his Petition was over four years too late.

Petitioner also alleges that his attorneys did not tell him he needed to file a petition for review before the Idaho Supreme Court in his direct appeal action. Even if that were the case, Petitioner's allegations would amount only to negligent attorney conduct, which is not enough to constitute "extraordinary circumstances." *Spitsyn v. Moore*, 345 F.3d 796, 800 (9th Cir. 2003) (inaction of counsel must rise to the level of "extraordinary circumstances" in order to qualify as grounds for equitable tolling); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (an attorney's miscalculation of the limitations period and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling); *see also Miranda v. Castro*, 292 F.3d 1063, 1066-67 (9th Cir. 2002) (appointed counsel's letter to petitioner containing miscalculated date for filing federal habeas petition was not an extraordinary circumstance warranting equitable tolling of one-year limitations period).

MEMORANDUM ORDER 7

In any event, Petitioner waited for four full years after his direct appeal judgment became final before filing his federal Habeas Corpus Petition.  There is no causal connection between his attorneys' acts on direct appeal and the lateness of his federal filing.

Having reviewed Petitioner's arguments, the Court finds and thus concludes that Petitioner has not shown factual circumstances that would meet the "extraordinary circumstances" threshold of *Pace v. Diguglielmo* to toll the lengthy period of time needed.   As a result, his Petition is untimely.

     4.    <u>Assertion of Actual Innocence to Avoid the Untimely Filing</u>

The Ninth Circuit has suggested that there may be an actual innocence exception to the one-year statute of limitations.  *See Majoy v. Roe*, 296 F.3d 770 (9th Cir. 2002) (remanding to the district court to determine whether the petitioner had established a claim of actual innocence, and if so, to next decide "what consequence such a finding has with respect to AEDPA's one-year statute of limitations").  *Majoy* indicates that district courts should first consider whether a petitioner is actually innocent before deciding if an actual innocence exception to the statute of limitation exists.  *Id*. at 777-78.

To show and establish actual innocence, Petitioner must make a colorable showing of factual innocence.  *Herrera v. Collins*, 506 U.S. 390, 404 (1993).  Where the petitioner pled guilty and did not have the evidence in his case evaluated by a jury, he must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty."  *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th

MEMORANDUM ORDER 8

Cir. 2001), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

Specifically as to cases in which petitioners challenge their guilty pleas, the United States Supreme Court stated:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

After reviewing Petitioner's exhibits attached to his Habeas Corpus Petition, Petitioner's Affidavit, and the state court record, the Court concludes that Petitioner has neither shown nor established that he is actually innocent. Rather, the record contains significant evidence of Petitioner's sexual abuse of his daughter. Most prominent are Petitioner's many admissions of the crime, which occurred when he pled guilty in open court, when he participated in a psychosexual evaluation before sentencing, when he made his statement to the court at sentencing, when he completed Sex Offender Therapy Group treatment in prison, and when he returned to state court to proclaim himself "rehabilitated" after having committed the crime.

MEMORANDUM ORDER 9

Notably, on February 18, 2000, at sentencing, Petitioner stated:

> Your Honor and court, I'm really, really sorry for what I've done, and I regret what I did, particularly to [C.B.]. But, anyway, I accept what I've done. I've had an opportunity to review all these evaluations on me, and I see that I've not only just a problem, but I have an opportunity, if given to me, to correct that problem.

*State's Exhibit A-3* at pp. 21-24.

On July 8, 2004, Petitioner's prison psychologist noted:

> Mr. Boone has analyzed and gained insight into how his non-sexual needs were met sexually; how problems in prior relationships with age appropriate adults affected his inappropriate behavior; how he is able to identify his pattern of sexual behavior and has developed a "safety net" plan for identifying and responding to high risk situations.

*Exhibits to Habeas Corpus Petition*, at p. 44 (Docket No. 1-5).

Petitioner underwent a psychosexual evaluation from November 29, 1999, to December 20, 1999, as part of his pre-sentence investigation. Social Worker Thomas J. Hearn conducted the study and prepared a comprehensive report for the sentencing court. *See State's Exhibit A-4*, at pp. 32-50.[2] During that evaluation, Petitioner admitted to long-term sexual abuse of his daughter who was the victim in this case, stating that his daughter had "agreed" to sexually satisfy him until his wife quit smoking and drinking coffee so that she could meet his sexual needs. Terry Polk, the presentence investigator, commented on "the absurdity of thinking that a 52-year-old man could believe he could

---

[2] State's Exhibit A-4 is the Presentence Investigation Report, which contains several different reports, each with their own page numbering. Page references in this Order are to the red page numbers, as the other page numbers are the nonconsecutive numbers of the various internal reports.

MEMORANDUM ORDER 10

enter into an agreement with his seven-year-old daughter to satisfy him sexually for a period of three years." *Id*. at p. 16.

After carefully reviewing and analyzing the record, the Court finds that Petitioner's allegations of actual innocence are meritless and frivolous. Petitioner alleges that his wife, Carol Boone, and their then-seven-year-old daughter, C.B., entered into a conspiracy wherein the daughter would seduce him. He alleges that the object of the conspiracy was to allow his former wife to obtain a divorce, remarry, and take possession of Petitioner's 1969 mobile home. Even if one could believe that a seven-year-old could enter into such a conspiracy, the divorce decree prepared by his former wife does not bear out the conspiracy theory. It shows that the only property awarded to the wife was her personal property, clothing, and jewelry, and that "all other community property" was awarded to Petitioner. *Exhibits to Habeas Corpus Petitioner*, at p. 22 (Docket No. 1-4).

Petitioner also alleges that his daughter's and wife's conspiracy included the following bizarre theory, which the Court includes in this Order only to emphasize the frivolous nature of Petitioner's claim of actual innocence:

> C.B. was estrogenic and hyperovaria. This produces hormones that contain steroids that are stimulating to the male for erections in a mad desire to copulate and reproduce by fertilizing the ovum. The male receives this stimulus by breathing in the odor and with direct contact with the steroid. A part of this coquetry is to bring about the male into submission by being drugged with the female hormone and leaves him in the sublime and lends a hand in cancelling volition and creating involuntary acts. All this is called seduction. The man receives the stimulus and it goes through his sensory pathway and triggers the erection and ejaculation. (C.B. is entering puberty.) This status renders the male into a semiconscious state. It is believed that Carol Boone was aware of this status when she had C.B.

MEMORANDUM ORDER 11

placed into the master bedroom to sleep with her and the petitioner.  But the
petitioner never did copulate with C.B.

*Petitioner's Affidavit*, at p. 9 (Docket No. 1-3) (spelling and punctuation regularized).

Petitioner further repeatedly alleges that he is not guilty because he did not

complete the act of intercourse with his daughter and because his daughter "was of the

age of reasoning and in all cases gave consent verbally or implied without complaint."

*Affidavit of Petitioner*, at p. 1 (Docket No. 19-3).  Even though Petitioner has been told by

many legal and psychological advisors that it is impossible for a child of this age to give

consent to sexual acts with adults, he apparently continues to hold onto this

rationalization for the crime he committed.

Petitioner also points to statements his wife and daughter made to police denying

sexual contact or harm early in the investigation as indicia of his actual innocence.

Denial of sexual abuse among family members to law enforcement officers is very

common.  These early statements are offset by the wife's admissions about the sexual

abuse at other places in the record[3] and the many other detailed statements of the sexual

abuse made by the daughter in the record.  At one point, the daughter stated her personal

---

[3]  The psychosexual evaluation social worker noted that Carol Boone "was disappointed
about the sexual abuse, and said, 'I had so much trust in that man, this is the last thing I would
expect.'" *State's Exhibit A-4*, at p. 43.  The social worker concluded:

> It is this evaluator's judgment that Carol Boone has mixed feelings about her
> relationship with Mr. Boone.  She denies that he has abused her as previous male
> partners have, although she is quite distraught about his abuse of the children.
> She has a great deal of dependency on Mr. Boone, and it appears it is very
> difficult for her to deal with the sexual abuse in the home without considerable
> counseling and support.

*Id.*

MEMORANDUM ORDER 12

opinion that "she was afraid her dad would get mad and kill her," if she revealed the sexual activity to her mother, although the daughter stated that Petitioner had not verbally threatened her.  *State's Exhibit A-4* at p. 25.

Petitioner's daughter gave a detailed report of the sexual abuse to Department of Health and Welfare Intake Worker Janet Boden.  *See State's Exhibit A-4* at p. 24.  The daughter's description of the abuse mirrors many of Petitioner's admissions, such as calling the abuse "snuggle time," Petitioner's habit of beginning the sexual abuse with a statement that "he needed her help," and Petitioner's habit of arousing himself by placing his penis in her vaginal area and then ejaculating into a Kleenex.  Compare *States' Exhibit A-4*, at pp. 25-26 (daughter's version), with the same exhibit at pp. 38-40 (Petitioner's version).

Petitioner's daughter also came forward at the sentencing hearing with a written statement detailing some of the sexual abuse and asking that her father be placed behind bars for life.  *See State's Exhibit A-2.*  The fact that the daughter's foster parent read the daughter's letter in court does not show that Petitioner is actually innocent, as he asserts. The sentencing hearing record makes it clear that the letter was written by the daughter about Petitioner's sexual abuse.  *See id.*  Petitioner's assertion that his then-eleven-year-old daughter could not read the letter herself in court because she had a "breakdown" due to the prosecution coercing her testimony is not supported by any evidence whatsoever.

Petitioner also believes that a letter his daughter wrote to him while he was in prison shows that he is actually innocent.  The letter states: "I'm still okay and may be

MEMORANDUM ORDER 13

able to trust you fully again and this small letter is [a] way I can forgive you." *Exhibits to Habeas Corpus Petition*, at p. 33 (Docket No. 1-4).  Regardless of how read, construed or interpreted, this letter in no way serves to exonerate Petitioner, but rather tends to confirm that the crime was committed.

Petitioner also argues that he is innocent because his daughter told the Health and Welfare worker that her dad's penis was black and red (State's Exhibit A-4, at p. 26), and, in reality, it is white and pink.  This allegation is clearly meritless in light of the consistent evidence that Petitioner and his daughter separately told of the sexual abuse that spanned a three-year-period.

Petitioner further claims that a letter from Kathryn Jordan, a family friend, proves his innocence.  She states that the Boones were her neighbors and that they sometimes exchanged meal invitations.  She states: "Our impression was that possibly Tom would play, 'rough-housing' with the kids, as happened with our family.  This may have been the occasion when a wrong impression and attitude led to the accusation of child molestation." *Exhibits to Habeas Corpus Petition*, at p. 5 (Docket No. 1-4).

Again, the Court finds Petitioner's argument meritless.  It is clear from the letter that Mrs. Jordan has no personal knowledge of whether Petitioner engaged in sexual abuse with his daughter, and certainly has no knowledge of Petitioner's extraordinarily detailed admissions of the sexual abuse.  *See State's Exhibit A-4.*  Mrs. Jordan's speculation that the charges arose from innocent "rough-housing" with the kids is far

MEMORANDUM ORDER 14

from Petitioner's version of repeated sexual abuse "under a consensual agreement with his daughter" over a three-year-period of time.

Petitioner also alleges that his daughter coerced him into pleading guilty or his counsel gave him improper advice on whether to plead guilty.  He offers no evidence to support these allegations.  Relying on the examples cited above, the Court will not address any of Petitioner's other remaining "actual innocence" allegations in light of their similarly frivolous nature.

      5.    <u>The Merits of Petitioner's Claims</u>

Alternatively, even if Petitioner's claims were timely, they are meritless and do not warrant relief.  As the Court noted in its Initial Review Order (Docket No. 5, at p. 3), Petitioner's assertion of actual innocence is not a cognizable habeas corpus claim. *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993) ("[O]ur habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.").  Also in that Order, the Court summarily dismissed Petitioner's "conditions of confinement" claim because it is not cognizable on habeas corpus review but must be brought in a civil rights action under 42 U.S.C. § 1983 (Docket No. 5, at p. 5).

MEMORANDUM ORDER 15

For Petitioner to prevail on his excessive sentence claim, he must show that the state court's adjudication of the merits of the claim either:

      1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Here, Petitioner was sentenced to a maximum term of fifteen years.  No case precedent from the United States Supreme Court exists to support Petitioner's argument that a sentence becomes constitutionally excessive where an inmate is held in custody during the indeterminate portion of his sentence.  Case holdings on closely-related issues cut against Petitioner's argument.  *See Hutto v. Davis*, 454 U.S. 370, 372 (1982) ("this Court has never found a sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment"); *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) (affirming a Michigan court judgment sentencing the defendant to a statutory mandatory life sentence without the possibility of parole for possessing more than 650 grams of cocaine).

Ninth Circuit cases, while not necessarily controlling here, are helpful to this Court's determination of whether the state court decision is contrary to the law as stated by the United States Supreme Court.  In *Cacoperdo v. Demosthenes*, 37 F.3d 504 (9th Cir. 1994), the Ninth Circuit Court of Appeals reviewed Cacoperdo's sentence of 40 years

MEMORANDUM ORDER 16

imprisonment for a conviction of sexual molestation of his three teenage daughters. The court rejected Cacoperdo's cruel and unusual punishment argument, reasoning:

> Cacoperdo's sentence is neither extreme nor grossly disproportionate to his crimes. Sexual molestation of a child is a very serious offense. Cacoperdo was convicted on ten separate counts, and the record reflects that they were only representative of a pattern of conduct that continued over a six-year period. The impact of these crimes on the lives of the victims is extraordinarily severe. If Cacoperdo is paroled after 40 years, he will have served an average of four years for each count. We conclude that a comparison of the gravity of Cacoperdo's offenses with the harshness of his sentence does not raise an inference of gross disproportionality. . . .

37 F.3d at 508 (relying upon *United States v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992)).

Based on all of the foregoing, the Court concludes that Petitioner's Eighth Amendment claim fails under 28 U.S.C. § 2254(d)(1). There is nothing in the record suggesting that the Idaho state courts made an unreasonable determination of the facts when reviewing Petitioner's sentencing claim. Therefore, relief is not warranted under § 2254(d)(2).

6.    Conclusion

The Court concludes that Petitioner's Petition was filed well after the expiration of the statute of limitations period. Statutory tolling is inapplicable because Petitioner's state court post-conviction matters were filed after the expiration of the federal statute of limitations, and the federal statute of limitations cannot be revived by post-expiration state filings. Petitioner has not shown that there are extraordinary factual circumstances that would make it appropriate to apply equitable tolling to all of the time that passed before Petitioner's federal filing. In addition, Petitioner has not shown that he is actually

innocent, which may have excused the untimeliness of his federal Petition had such evidence existed.

Alternatively, Petitioner's claims are meritless and do not warrant relief under 28 U.S.C. § 2254(d).  Accordingly, Petitioner's Petition is subject to dismissal with prejudice, and, therefore, the Court does not reach Respondent's argument that Petitioner's claims are also procedurally defaulted.

**D.    Petitioner's Motion for Opposition and Suppression to/of Respondent's Motion for Summary Dismissal (Docket No. 12)**

Petitioner argues that Respondent should not be permitted to file a motion for summary dismissal because the Court did not dismiss the case on initial review. Petitioner is mistaken in believing that the Court's Initial Review Order insulates him from a motion for summary dismissal.  In fact, the Initial Review Order specifically permits Respondent to file "a responsive pleading or motion," which includes a motion for summary dismissal.  *See Order of December 4, 2006*, at p. 10 (Docket No. 5). Because there is no legal basis for Petitioner's Motion, it shall be denied.

**E.     Petitioner's Motion for Judgment and Issuance of the Habeas Corpus Writ (Docket Nos. 19-1 and 19-2)**

Petitioner moves the Court to rule that his constitutional rights have been violated and to issue a writ.  Petitioner alleges that his conviction was brought about by the fraudulent acts of his ex-wife, claims that he is innocent, and asks this Court to disregard the state court record.  Because the Petition is untimely, and, alternatively, because the claims in the Petition are meritless, the Motion is denied.

MEMORANDUM ORDER 18

**F.     Petitioner's Motion to Revoke and Vacate the State Case, Records, Transcripts, and Discharge the Petitioner (Docket No. 20)**

This Motion seeks Petitioner's release and expungement of all state court records related to his conviction based on his actual innocence.  Petitioner's Motion is subject to denial for the following reasons: (1)  Petitioner has set forth no grounds showing his actual innocence, (2) actual innocence is a gateway argument and not a cognizable habeas corpus claim, (3) Petitioner's Petition was untimely filed, and (4) Petitioner's claims are meritless.

**G.     Petitioner's Motion for an Evidentiary Hearing (Docket No. 21)**

Petitioner requests a hearing to present evidence in support of his assertion of actual innocence.  The United States Supreme Court recently clarified that the decision to grant an evidentiary hearing in federal habeas corpus cases governed by AEDPA "is left to the sound discretion of district courts."  *Schriro v. Landrigan*, -- S.Ct. --, 2007 WL 1387923, at *5 (2007).  The *Landrigan* Court further explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.  Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

*Id*. at *6 (internal citations and punctuation omitted).  Therefore, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not

MEMORANDUM ORDER 19

required to hold an evidentiary hearing." *Id.* For example, "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Id.*

Here, as noted above, Petitioner's assertion of actual innocence is truly meritless. While this is a slightly different context than in *Landrigan*, because an evidentiary hearing would be address only Petitioner's ability to make a threshold showing of actual innocence as a procedural gateway to having his claims heard on the merits as opposed to an evidentiary hearing on the merits of his claims, the general principle remains applicable. This Court is not required to hold an evidentiary hearing simply because Petitioner has construed the evidence contained in the record in an unreasonable manner to support a frivolous assertion. Indeed, during state court proceedings, Petitioner presented the same evidence and circumstances, not to show actual innocence, but rather to show the opposite conclusion, that he has been rehabilitated *after having committed the crime*. Because this federal court record and the state court record provide ample evidence of Petitioner's guilt, the Court declines the request to hold an evidentiary hearing.

**H.     Petitioner's Motion to Vacate Sentence (Docket No. 28)**

Because the Petition is untimely, the Court cannot grant Petitioner's Motion to Vacate Sentence, which is a motion based upon the merits of Petitioner's claims. Alternatively, because Petitioner's claims are meritless, he is not entitled to relief.

MEMORANDUM ORDER 20

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.     Petitioner's Motion for Default Judgment (Docket No. 7) is DENIED.

B.     Petitioner's Motion of Complaint (Docket No. 16) is MOOT.

C.     Respondent's Motion for Summary Dismissal (Docket No. 8) is

       GRANTED.

D.     Petitioner's Motion for Opposition and Suppression to/of Respondent's

       Motion for Summary Dismissal (Docket No.12) is DENIED.

E.      Petitioner's Motion for Judgment as a Matter of Law (Docket No. 18) is

       DENIED.

F.     Petitioner's Motion for Judgment and Issuance of the Writ (Docket Nos. 19-

       1 and 19-2) are DENIED.

G.     Petitioner's Motion to Revoke and Vacate the State Case, Records,

       Transcripts, and Discharge the Petitioner (Docket No. 20) is DENIED.

H.     Petitioner's Motion for Hearing (Docket No. 21) is DENIED.

I.     Petitioner's Motion to Vacate (Docket No. 28) is DENIED.

J.     Petitioner's Petition is dismissed with prejudice.

DATED:  **June 7, 2007**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

MEMORANDUM ORDER 21